IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNNWOOD PERRY, formerly an inmate at the Allegheny County Jail, | ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | Civil Action No. 05-1757 Judge Arthur J. Schwab/ Magistrate Judge Amy Reynolds Hay |
| THE COMMONWEALTH OF PENNSYLVANIA; THE COMMONWEALTH OF PENNSYLVANIA BOARD OF PROBATION AND PAROLE; CATHERINE C. McVEY, Chairman, Pennsylvania Board of Probation and Parole; DAVID SEDON, Agent, Pennsylvania Board of Probation and Parole; THE COUNTY OF ALLEGHENY; THE ALLEGHENY COUNTY JAIL; RAMON C. RUSTIN; WILLIAM L. EMERICK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) | RE: Dkts. [57], [59], [62] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that the Defendants' Motions for Summary Judgment,

Dkt. Nos. [57] & [59],  be granted and that the Motion for Summary Judgment filed by Plaintiff,

Dkt. [62], be denied.

REPORT

This case has been the subject of previous proceedings, familiarity therewith is presumed.

Lynwood Perry ("Plaintiff") was, at the time of initiating this suit, living in Pennsylvania and was

under a sentence of probation from New Jersey.  Pursuant to an Interstate Compact,

responsibility for supervising Plaintiff on probation was transferred to the Pennsylvania Board of

Probation and Parole ("Board").  While on probation here in Pennsylvania, Plaintiff was arrested on public intoxication charges and for carrying a firearm without a license (collectively "the new state charges").  He was transported to the Allegheny County Jail ("Jail") where he was placed after his arrest.  Ultimately, as a result of the Board issuing a warrant, which acted as a detainer, Plaintiff was maintained in the Jail even after he made bail on the new state charges and even after New Jersey authorities had indicated to the Board that they would not be issuing any warrant against Plaintiff but instead would await the disposition of the new state charges. Plaintiff was not released from the Jail until nearly 92 days after his initial arrest.

Plaintiff alleges the Board and the Jail had no authority to hold him for such a period of time.  Moreover, Plaintiff contends that this violated his rights and, with the assistance of privately retained counsel, has initiated this civil rights action pursuant to 42 U.S.C. § 1983.  In addition, pursuant to the Court's supplemental jurisdiction, Plaintiff brings state law claims of violations of the state constitution and state tort law.  By way of relief, Plaintiff seeks damages, fees, costs and interest.

Because the Board and its employees, Catherine McVey and David Sedon (collectively "the State Defendants") had authority to detain Plaintiff as part of its role in conducting "supervision" of Plaintiff, Plaintiff's premise that the Board was without authority to do so must fail and hence, both the State  and the County Defendants  are entitled to summary judgment as no federal rights of Plaintiff were violated.  Alternatively, Because the Jail and its employees, Ramon Rustin and William Emerick (collectively "County Defendants") were merely acting pursuant to a facially valid warrant to detain, the County Defendants committed no wrongdoing and hence are entitled to summary judgment.  Alternatively, even if Plaintiff's rights were violated, it would not have been clear to reasonable officials in the shoes of the Defendants that

they were violating Plaintiff's rights.  Accordingly, both the State and County Defendants who are real persons, as opposed to governmental entities, are entitled to qualified good faith immunity.

**Procedural History**

We are considering cross motions for summary judgment.  The State Defendants filed a motion for summary judgment, Dkt. [57], a brief in support, Dkt. [58], and a concise statement of undisputed facts, Dkt. [61].   The County Defendants filed a motion for summary judgment, Dkt. [59], and a brief in support, Dkt. [60].

Plaintiff filed a motion for summary judgment, Dkt. [62], a concise statement of undisputed facts, Dkt. [63], and a brief in support with attached evidentiary materials, Dkt. [64]. The State Defendants filed a brief in opposition, Dkt. [65], to the Plaintiff's motion for summary judgment, and a response, Dkt. [66], to Plaintiff's concise statement of undisputed facts.   The County Defendants also filed a response, Dkt. [73], to Plaintiff's concise statement of undisputed facts, and a brief in opposition, Dkt. [74], to Plaintiff's motion for summary judgment.

Plaintiff filed a brief in opposition, Dkt. [71], to the State Defendants' motion for summary judgment.  Plaintiff also filed a response, Dkt. [72], to the State Defendants' concise statement of material facts.

**Standard of Review**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.Proc. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the

burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  The moving party bears

the initial burden of identifying the absence of evidence in the record to support the non moving

party's case.  <u>Id</u>. 477 U.S. at 325 (party can move for summary judgment by "pointing out to the

district court that there is an absence of evidence to support the non-moving party's case.").

Once that burden has been met, the non-moving party must set forth "specific facts showing that

there is a *genuine issue for trial* . . ." or the factual record will be taken as presented by the

moving party and judgment will be entered as a matter of law.  <u>Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  An issue is genuine only if the evidence is such

that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty

Lobby, Inc.</u>, 477 U.S. 242 (1986).  "Where the record taken as a whole could not lead a

reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial."

<u>Matsushita</u>, 475 U.S. at 587.

In short, the summary judgment motion is an evidence testing device to see if there is

sufficient evidence to support a party's position with respect to an issue for which that party bears

the burden of proof at trial so as to justify holding a trial.  <u>See</u>, <u>e.g.</u>, <u>Anderson</u>, 477 U.S. at 249

("there is no issue for trial unless there is sufficient evidence favoring the non moving party for a

jury to return a verdict for the party.").  Nevertheless, "when the only issues to be decided in the

case are issues of law, summary judgment may be granted." 10A Charles Alan Wright & Arthur

R. Miller, Federal Practice And Procedure §  2725 (3d ed. 1998).

**Discussion**

**1.  Which right was allegedly violated**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  In order to

> make out a claim under Section 1983, a plaintiff must demonstrate that the
> conduct of which he is complaining has been committed under color of

> state or territorial law and that it operated to deny him a right or rights
> secured by the Constitution and laws of the United States. The plaintiff
> must also establish that it was the acts of the defendant which caused the
> constitutional deprivation.

Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D.Pa. 2003)(citations omitted). "Accordingly,

'[t]he first step in evaluating a [§ ] 1983 claim is to identify the exact contours of the underlying

right said to have been violated and to determine whether the plaintiff has alleged a deprivation

of a constitutional right at all.'" Bilbili v. Klein, 249 Fed.Appx. 284, 287 (3d Cir. 2007)(quoting

Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).

It is not quite clear which Constitutional right or rights the Plaintiff is alleging was/were

violated. He cites to the Fourth and Fourteenth Amendments in the operative complaint.

However, he does not make clear whether he means by this invocation the Fourth Amendment as

incorporated into the Fourteenth Amendment or whether he is making both a Fourth Amendment

claim and a Fourteenth Amendment claim. In addition, to the extent that he is making a

Fourteenth Amendment claim, independent of the Fourth Amendment, he does not make clear

whether he is making a procedural due process claim or a substantive due process claim. Finally,

Plaintiff further muddies the waters by asserting that "Plaintiff's § 1983 claim is that of false

imprisonment under the **Fifth** and Fourteenth Amendment's [sic] due process clauses." Dkt.

[71] at 3 (emphasis added). The less than pellucid explanation of Plaintiff's claims renders

analysis difficult.

Plaintiff has no Fifth Amendment claims for at least one of two reasons. As presented by

the Plaintiff, in this Section 1983 suit all of the Defendants are state government actors, or put

another way, act under color of state law and, are not federal government actors. Insofar as

Plaintiff feels he is being deprived of liberty without due process, he fails to state a claim under

the Fifth Amendment because its due process clause only protects against Federal government

actors, not state government actors.  See, Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir.

1997)("The Fifth Amendment obviously does not apply here--the acts complained of were

committed by state rather than federal officials.");  Jones v. City of Jackson, 203 F.3d 875, 880

(5th Cir. 2000)("The Fifth Amendment applies only to violations of constitutional rights by the

United States or a federal actor.  See Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996).  Jones has

not alleged that McMillin or Tannehill were acting under authority of the federal government.

Tannehill and McMillin are entitled to summary judgment on Jones's Fifth Amendment

Claims.") ;  Wrinkles v. Davis, 311 F.Supp.2d 735, 738 (N.D.Ind. 2004) ("The Fifth

Amendment's due process clause applies only to acts of the federal government and does not

limit actions of state officials."). All the Defendants named herein are state government actors,

not federal government actors and, hence, the Fifth Amendment is inapplicable.   Thus, we will

analyze Plaintiff's claims as arising under the Fourteenth Amendment's due process clause.

Second, even if  a due process claim under the Fifth Amendment were somehow viable,[1]

such a claim would simply be redundant to any due process claims under the Fourteenth

Amendment's due process clause.  Morehead v. People of New York ex rel. Tipaldo, 298 U.S.

587, 610 (1936)("[T]he restraint imposed by the due process clause of the Fourteenth

Amendment upon legislative power of the State is the same as that imposed by the corresponding

provision of the Fifth Amendment upon the legislative power of the United States."), overruled

in part on other grounds by, Olsen v. State of Nebraska ex rel. Western Reference & Bond Ass'n,

---

1.  Because many interstate compacts, including the Interstate Compact for the Supervision of Adult
Offenders, which is the compact at issue here, can be considered both state and federal law, Doe v.
Pennsylvania Bd. of Probation and Parole, 513 F.3d 95,102-03 (3d Cir. 2008), it is possible to construct
an argument that the State Defendants were acting under color of federal law, i.e., under color of the
Interstate Compact, as well as under color of state law. However, we need not resolve this potentially
difficult issue because the parties do not raise it, and because, as explained in the text, due process
protections afforded under both the Fifth and Fourteenth Amendment are identical.

313 U.S. 236 (1941); <u>Town of Tonawanda v. Lyon</u>, 181 U.S. 389, 391-92 (1901) ("The purpose

of that Amendment [i.e., the Fourteenth Amendment] is to extend to the citizens and residents of

the states the same protection against arbitrary state legislation affecting life, liberty, and

property, as is afforded by the 5th Amendment against similar legislation by Congress."); <u>Unites

States v. Bowen</u>, 414 F.2d 1268, 1275 (3d Cir. 1969)("It was not 'material that the Fourteenth

Amendment was involved in the Schlesinger Case, instead of the Fifth Amendment, as here[.]

The restraint imposed upon legislation by the due process clauses of the two amendments is the

same. . . .'") (<u>quoting</u>, <u>Heiner v. Donnan</u>, 285 U.S. 312, 326 (1932)); <u>Mathis v. Franklin County

Children Services</u>, NO. 2:08-CV-084, 2008 WL 1775422, *5 (S.D.Ohio, April 16, 2008)("Fifth

Amendment due process claims are analyzed exactly like Fourteenth Amendment due process

claims. . . . However, actions by state or local governmental entities are properly analyzed under

the Fourteenth Amendment rather than the Fifth Amendment. Thus, there is no viable Fifth

Amendment claim here.").

        To the extent that Plaintiff claims a procedural due process violation[2] in the Board's

initial filing of the detainer and his being kept in the Jail pursuant to the Board's detainer even

after he made bail on his new Pennsylvania state charges, Plaintiff fails to state a claim.  It is

undisputed that Plaintiff received a so-called <u>Gagnon I</u>[3] hearing, wherein he was afforded notice

of the alleged violation of his probation and an opportunity to be heard prior to it being

_____

2.  <u>See</u> Dkt. [71] at 5 ("Thus it is appear [sic] that the right to **procedural** due process set forth in the
Fifth Amendment would govern False Imprisonment claims based upon detention without lawful
justification.")(emphasis added).

3.  <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 782(1973) (holding probation revocation procedure must comply
with "conditions specified in <u>Morrissey v. Brewer</u> " for parole revocation, which includes a preliminary
hearing to determine if there is probable cause to find that the probationer violated probation and then a
final hearing to determine whether the probation should be revoked).

determined that Plaintiff would continue to be detained.[4]  This is all that procedural due process requires.  <u>Zappan v. Pennsylvania Board of Probation and Parole</u>, 152 Fed.Appx. 211, 220 (3d Cir. 2005)("The essential requirements of any procedural due process claim are notice and the opportunity to be heard.").  Moreover, he was represented by counsel in the <u>Gagnon I</u> hearing. Dkt. [61] at 4, ¶ 17; Dkt. [72] at 3, ¶ 17.  At the conclusion of the hearing, it was determined by the hearing officer that there was probable cause to believe Plaintiff violated his probation based on the filing of the new state criminal charges.  <u>Id</u>. at ¶ 18; <u>id</u>. at ¶ 18.  Hence, detaining Plaintiff thereafter posed no **procedural** due process violations given that Plaintiff received all the process he was entitled to under <u>Gagnon v. Scarpelli</u>.  <u>Morrissey v. Brewer</u>, 408 U.S. 471, 487 (1972)("Based on the information before him, the [hearing] officer should determine whether

---

4.    While it is true that the <u>Gagnon I</u> hearing did not occur until August 29, 2004, and Plaintiff made bail on the new state charges as of August 4, 2005, the delay of 25 days is not unreasonable under these circumstances as a matter of law and does not deny procedural due process.  <u>See</u>, <u>e.g.</u>, <u>Goodman v. Keohane</u>, 663 F.2d 1044, 1046 (11th Cir. 1981)(test to determine whether delay violates constitution is one of unreasonableness); <u>Faheem-El v. Klincar</u>, 841 F.2d 712,724 (7th Cir. 1988) ("<u>Morrissey</u> mandates certain procedural safeguards to protect the parolee's conditional liberty interest, but as previously observed, these processes take time"); <u>Benny v. U.S. Parole Com'n.</u>, 295 F.3d 977, 986 (9th Cir. 2002)("Benny's detention for 31 days before a preliminary interview was conducted did not violate due process."); <u>Paul v. McFadin</u>, 117 F.3d 1428 (Table), 1997 WL 407843 (10th Cir. 1997) (delay of three months between arrest and hearing did not violate procedural due process); <u>Pierre v. Washington State Bd. of Prison Terms and Paroles</u>, 699 F.2d 471, 473 (9th Cir. 1983)("Since the on-site hearing was conducted only 21 days after appellant's parole was suspended, it was prompt enough to qualify as the preliminary probable cause determination required by Morrissey."); <u>Trotter v. Klincar</u>, 566 F.Supp. 1059, 1065 (N.D. Ill. 1983)("<u>Morrissey</u> does not require that preliminary parole revocation hearings be held within a specific time period" and finding a delay of several months before the preliminary/probable cause hearing did not violate procedural due process), <u>aff'd</u>, 748 F.2d 1177 (7th Cir. 1984); <u>Adams v. Jones</u>, No. CIV. A. 96-4377, 1999 WL 178365, at *9 (E.D.Pa.  March 30, 1999)(noting that "[t]he hearing was held on August 31, 1994, only a few weeks after plaintiff's arrest earlier that month in Delaware County" and holding that such a delay of a few weeks between arrest and the Gagnon I hearing was not a constitutional violation of procedural due process); <u>Burton v. Delaware State Bd. of Parole</u>, No. CIV.A.97-359, 2002 WL 461329, at *3 (D.Del. March 15, 2002)(involving a 26 day delay, the court stated that "the Court cannot conclude that the timing of the hearing was so unreasonable as to violate Petitioner's due process rights.").  Nor, in the face of the cases cited immediately preceding, can Plaintiff argue that any such preliminary hearing must occur prior to detention by the Board.  <u>Cf</u>. <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975)(authorizing short detention prior to a hearing under the Fourth Amendment).

there is probable cause to hold the parolee for the final decision of the parole board on revocation. **Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision.**") (emphasis added). Thereafter, a final revocation hearing or a Gagnon II hearing must be held within a reasonable time after the preliminary or Gagnon I hearing. Smith v. Snodgrass, 112 Fed.Appx. 695, 698 (10th Cir. 2004)("Morrissey holds that a final revocation hearing, i.e., one that 'lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation,' 408 U.S. at 488, 'must be tendered within a reasonable time,' id. (noting 'lapse two months ... would not appear to be unreasonable')"). Plaintiff does not argue that an unreasonable time accrued after the Gagnon I hearing but before the Gagnon II hearing. Rather, it appears Plaintiff is arguing that the Board had no authority to detain Plaintiff after the Gagnon I hearing, and indeed, Plaintiff argues that the Board lacked authority to detain him even before the Gagnon I hearing. See, e.g., Dkt. [71] at 4 (arguing that the Board had no authority to detain Plaintiff after August 4, 2007, the date whereon he posted bail on the new Pennsylvania State charges).

In light of the conclusion that Plaintiff has no procedural due process claim, the Court understands Plaintiff to be making a substantive due process claim, i.e., that it was fundamentally unfair for the Board to detain Plaintiff given that it had no legal authority to do so, (despite the procedural protections afforded Plaintiff via the Gagnon I hearing) especially **after** the New Jersey authorities communicated to the Pennsylvania authorities that New Jersey would not be issuing a warrant to detain Plaintiff and would instead await the outcome of Plaintiff's new state charges. Hivala v. Wood, 195 F.3d 1098, 1104 (9th Cir. 1999) ("A substantive due process violation occurs when government conduct violates fundamental fairness and is 'shocking to the

universal sense of justice.' Kinsella v. United States, 361 U.S. 234, 246, (1960).").[5]  That

Plaintiff is making a substantive due process claim is made clear when we consider his argument,

Dkt. [71] at 14,[6] that no matter what process or procedural protections the Board afforded to

Plaintiff, if the Board had no authority to detain him, as Plaintiff argues, then the Board would be

violating Plaintiff's "due process" rights.  Such a due process argument that finds procedural

protections irrelevant must be a substantive due process argument, i.e, an argument that

irrespective of the procedures afforded to Plaintiff, it violates his rights, or, in other words, it is

fundamentally unfair to detain him in the absence of authority to do so.  Cf.  Boyanowski v.

Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000)("The substantive component of

the Due Process Clause limits what government may do regardless of the fairness of procedures

that it employs, and covers government conduct in both legislative and executive capacities.").

---

5.  Moreover, Plaintiff has no Fourth Amendment claim for false imprisonment/false arrest because he does not appear to challenge the propriety of Plaintiff's initial arrest, rather he only seems to challenge his continued detention by the Board after the initial forty eight hours or after Plaintiff made bail on the new state charges.  See Dkt. [71] at 4 ("Defendants note properly that the gravamen of Perry's Amended Complaint relates **not** to the arrest or initial 48 hour detainer, but rather the permanent detainer that kept the Plaintiff in the Allegheny County Jail (ACJ) after he posted bail on August 4, 2007, six days after his arrest on July 29, 2007.")(emphasis added).  See also Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000) wherein the Court of Appeals held that

> Jones's Fourth Amendment allegations fail because he admitted that a facially valid bench warrant existed in Hinds County on the date the detainer was sent to Jackson City Jail. The original seizure was therefore pursuant to a valid court order.  "Fourth Amendment claims are appropriate [only] when the complaint contests the method or basis of the arrest and seizure of the person."  Brooks v. George County, Miss., 84 F.3d 157, 166 (5th Cir.1996). The protections offered by the Fourth Amendment do not apply if the plaintiff challenges only continued incarceration. Id. We must therefore reverse and render summary judgment for Tannehill and McMillin on Jones's Fourth Amendment Claims.

6.  "Plaintiff's argument is fairly simple. If the state didn't have the authority to continue to detain him, then any Gagnon I hearing could not have satisfied due process. By example, a Gagnon I hearing would not constitute a sufficient basis to detain a person who was not a parolee or probationer." Dkt. [71] at 14.

Hence, the Court concludes that the only cognizable Constitutional right that Plaintiff alleges to have been infringed is his substantive due process rights under the Fourteenth Amendment.

### 2. The Board Possessed Authority to Detain

As presented by the parties, there are no real genuine **material** factual issues.  Rather, the issue is a purely legal one.  The real issue is the legal authority of the Board, under the existing statutory scheme, to detain an out-of-state probationer.  The issue reduces to a matter of statutory construction.

In their summary judgment motion, the State Defendants argued that the Board had statutory authority to detain Plaintiff, citing, *inter alia*, 61 P.S. § 324.2, (a portion of the Interstate Compact for the Supervision of Adult Offenders), the rules and procedures of the Interstate Commission for Adult Supervision Rule 4.101, as well as 61 P.S. 331.17.[7]  The State Defendants pointed out that Plaintiff, as an out-of-state transferee probationer, possessed the equivalent status of a "special probationer"[8] under Pennsylvania law and that the Board has the power to detain such special probationers.  This was sufficient to meet their initial summary

---

7.    State Defendants later clarified that they should have cited to 61 P.S. 331.17a because Section 331.17 applies only to persons sentenced to probation for a period of less than two years, whereas Section 331.17(a) applies to probationers sentenced to probation for more than two years, which was the case for Plaintiff.  Dkt. [65] at 7 n.2.
          Section 331.17a(a) provides that

          (a) The board shall have exclusive power to supervise any person hereinafter placed on probation by any judge of a court having criminal jurisdiction when the court may by special order direct supervision by the Board.

8.    "Special probationer" is defined as "any person placed on probation 'by any judge of a court having criminal jurisdiction when the court may by special order direct supervision by the Board.'" Dkt. [65] at 7, quoting 61 P.S. §331.17a.  Plaintiff concedes that Plaintiff's status under Pennsylvania law was equivalent to that of a "special probationer."  Dkt. [61] at 4, ¶15 (State Defendants' concise statement of material facts asserting that Plaintiff was "equivalent to a 'special probationer'") and Dkt. [72] at 2, ¶ 15 (Plaintiff's counterstatement of facts, admitting such).  <u>See also</u> Dkt. [71] at 9 to 10.

judgment burden so as to shift the burden to Plaintiff to show that the State Defendants did not have such authority.

In response, Plaintiff argued that there are only two sources of authority that could authorize the Board's detaining of Plaintiff. Dkt. [64] at 10 ("There are two relevant sources that govern the authority of the PaBPP *vis-à-vis* an out of state probationer whom Pennsylvania has agreed to supervise. These are the Interstate Compact itself, and second, the Parole Act."). Specifically, Plaintiff argued that the Board's authority to detain can derive from only 61 P.S. § 321, see, e.g., Dkt. [64] at 6; 10 - 11, or, from 61 P.S. § 331.17. Section 321 of Title 61 of Purdons Statutes is known as "the Interstate Compact for the Supervision of Parolees and Probationers." See, e.g., 61 P.S. §321.1. Unfortunately for Plaintiff, the Interstate Compact for the Supervision of Parolees and Probationers was repealed effective June 19, 2002 by the Pennsylvania legislature. See, e.g., Doe v. Pennsylvania Bd. of Probation and Parole, 513 F.3d 95, 99 n.1 (3d Cir. 2008)("On June 19, 2002, the Interstate Compact for the Supervision of Parolees and Probationers was repealed and replaced by the Interstate Compact for the Supervision of Adult Offenders, which provides for the 'controlled movement of adult parolees and probationers across state lines.' 61 Pa. Stat. Ann. § 324 (2002) "). Although Defendants pointed out to Plaintiff that he was relying upon a repealed statute, Dkt. [65] at 11 to 12, Plaintiff failed to seek to amend his own summary judgment motion or his own responses to the Defendants's summary judgment motions. On this basis alone, Plaintiff has failed to show that the State Defendants are not entitled to summary judgment because he has failed to demonstrate that the Board was without authority under the currently effective Compact to detain Plaintiff.[9]

9. Plaintiff does mount an argument that under the Interstate Compact for the Supervision of Adult Offenders, the Board only had authority over Plaintiff to the same extent that the Board had over special

(continued...)

Plaintiff's arguments that the Board lacked authority under the Interstate Compact for the Supervision of Adult Offenders to detain Plaintiff are unavailing as it appears that the Board would have authority to do so under the Interstate Compact for the Supervision of Adult Offenders.  See, e.g., Dkt. [58-7] at 26 to 33 (Interstate Commission for Adult Offender Supervision Advisory Opinion Number 2-2005 issued March 4, 2005).  The  Interstate Compact for the Supervision of Adult Offenders created an Interstate Commission for Adult Offender Supervision that permitted the Commission to promulgate rules that had the force and effect of laws in the compacting states.  See, e.g., 61 P.S. § 324.1 Article II (defining "Rules").  The Commission promulgated Rule 4.101 effective January 1, 2005, which provides in relevant part that "[a] receiving state shall supervise an offender transferred under the interstate compact in a manner determined by the receiving state and consistent with the supervision of other similar offenders sentenced in the receiving state."  Dkt. [58-6] at 15 (emphasis deleted).[10]  The Interstate Commission has determined that "supervision" granted to a receiving state, which in this case is Pennsylvania, includes the ability to detain an offender even if the sending state, which in this case was New Jersey, did not desire to issue a warrant to detain the offender.  See Dkt. [58-7] at 26 to 33 (Interstate Commission for Adult Offender Supervision Advisory Opinion Number 2-2005 issued March 4, 2005).   In Opinion Number 2-2005, the Commission issued an opinion in response to a request from Florida, as to whether Florida's officials have the power to arrest

9.  (...continued)
probationers and that such authority only extended to "supervision" under state law, not to detention.  Dkt. [64] at 14 to 15.  The court addresses this argument below.

10.   The Rules of the Commission are also available at:

http://www.interstatecompact.org/Portals/0/library/legal/ICAOS_Rules.pdf

(Site last visited 6/2/08).

and detain out of state transferee probationers when the Interstate Compact for the Supervision of

Adult Offenders speaks only to "supervision" of such out of state transferee probationers.   The

Interstate Commission determined that the power to supervise included the power to arrest and

detain.  The opinion stated that:

> All activities of the Interstate Commission and the member states are directed at
> promoting these two overriding purposes. All member states, their courts and
> agencies, are required to take all necessary action to "effectuate the Compact's
> purposes and intent." See, INTERSTATE COMPACT FOR ADULT OFFENDER
> SUPERVISION, ART. IX, § A. It does not effectuate the purpose and intent of the
> ICAOS – which is fundamentally the promotion of public safety – for a state to
> maintain that it has the power to arrest its own offenders for probation violations
> but is powerless to arrest an out-of-state offender for similar violations, regardless
> of the latter's threat to the safety of the community or disregard to the direct
> purposes of probation supervision. To read the term "supervision" so narrowly
> defeats the overriding goals for which the states agreed to enter into the Compact.

Dkt. [58-7] at 31.   The opinion concluded that

> In supervising out-of-state offenders, authorities in a receiving state possess a dual
> status. First, they act to supervise such an offender under the same standards as
> any in-state offender. Second, they act as agents for the sending state to supervise
> and effectuate the purposes of the offender's probation. Courts have
> unequivocally recognized that out-of-state offenders can be arrested and detained
> for (1) committing new crimes in the receiving state and (2) upon request of the
> sending state pending retaking. Additionally, out-of-state offender may be arrested
> and detained for failing to comply with the terms and conditions of their probation
> if such a failure would have resulted in an arrest of a similarly situated in-state
> offender.

Dkt. [58-7] at 33.  This Court is entitled to engage in statutory construction of the Interstate

Compact and to interpret "supervision" to the extent that the phrase "supervision" is ambiguous

in the present context as to whether it includes the power to arrest and detain.  Doe v.

Pennsylvania Bd. of Probation and Parole, 513 F.3d 95,102-03 (3d Cir. 2008) (the Compact is

federal law); Edgar Allen Steel Co. v. U.S., 16 Cust. App.26, 37, 1928 WL 28007, at *11  (Cust.

App. 1928)(Graham, J., dissenting)("This court and other courts have frequently said that, while

unambiguous words call for no construction, nevertheless if unambiguous words are used in such

a manner as to produce ambiguity, then it is the duty of the court to look to the purpose of the act and to attempt to construe the law in accordance with the intent of its framers.").  The Court holds that the term "supervision" is indeed ambiguous on this point.  The Court further deems it proper to give some deference to the advisory opinion of the Interstate Commission and further holds that, as a matter of statutory construction, the Board's ability to "supervise" under the Compact included the ability to arrest and to detain Plaintiff.

Even if we were to accept this case on the terms that Plaintiff presents, i.e., that the applicable source of authority for the Board to act was the now repealed Interstate Compact for the Supervision of Parolees and Probationers, still, the Defendants would be entitled to summary judgment.  See, e.g., Kaczmarek v. Longsworth, 107 F.3d 870 (Table), 1997 WL 76190 (6th Cir. 1997)(unpublished).

The case of Kaczmarek is on all fours with the case at bar.  A Michigan probationer was permitted to transfer his supervision to Ohio under the Interstate Compact. While in Ohio, his probation officer received information that plaintiff was having inappropriate sexual contact with a minor.  On March 2, 1994, the officer directed the sheriff to arrest Kaczmarek for violation of the terms of his probation. The probation officer also issued the equivalent of a detainer to the sheriff, directing him to keep plaintiff in custody until released by the Ohio Parole Board.  Id. at *1-2.  A probable cause hearing was scheduled for 3/15/04.  Id. at *1-2.  Probable cause was found and criminal charges were filed on 3/31/94.  In the meantime, the Ohio probation officer forwarded reports to Michigan, notifying the sending state of Kaczmarek's detention and probable cause hearing results.  On March 31, 1994, Michigan prepared an interstate report and teletyped it to the Ohio probation office, stating that Michigan would not be extraditing Kaczmarek and had not authorized his detention on the probation violation charge.  Id. at *2.

15

Michigan also sent a copy of this report to the sheriff in Ohio who was detaining Kaczmarek. The Ohio Probation officer found the Michigan report to be confusing, in part, because it said nothing about the Michigan sentencing judge although the Michigan probation officer had indicated he would talk to the court. Id. Finally, on May 9, 1994, Michigan sent another interstate report which said that the officer had discussed this with the sentencing judge and "the instructions are the same. A WARRANT WILL NOT BE FORTHCOMING." Id. at *3.

The probationer-plaintiff, Kaczmarek, then sued under Section 1983 the sheriff of the jail in which Kaczmarek was detained, as well as an Ohio probation official in charge of Kaczmarek's probation. Plaintiff Kaczmarek claimed that it was a violation of his "due process rights and an infliction of cruel and unusual punishment for the defendant to keep him in jail after April 1, 1994," which was the date of the teletyped message from the Michigan Probation authorities to the Ohio authorities, indicating that Michigan authorities would not be issuing a warrant to detain Kaczmarek. Kaczmarek v. Longsworth, 1997 WL 76190, at *4. The Sixth Circuit rejected Kaczmarek's argument, noting that

> We see no constitutional violation on the facts presented here. The hearing conducted by the Ohio Adult Parole Authority on March 15 had established, on the basis of apparently credible evidence, that there was probable cause to believe that Mr. Kaczmarek had repeatedly engaged in conduct constituting a serious violation of the terms of his probation. Mr. Kaczmarek concedes that it was not unconstitutional for the Ohio authorities to keep him in jail until the sheriff's department received the teletype on April 1, 1994, by which time criminal charges were pending against Mr. Kaczmarek in the Auglaize County Municipal Court. We are not persuaded that anything in the United States Constitution required the State of Ohio to treat the teletype as an instant "get out of jail" card for Mr. Kaczmarek.

> The plaintiffs maintain that it was Michigan, not Ohio, that called the shots here. We are by no means sure that this is so. The Interstate Compact expressly provides that "[e]ach receiving state [Ohio, in this instance] will assume the duties of visitation of and supervision over probationers or parolees of any sending state [ i.e. Michigan] **and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees.**" Ohio

> Rev.Code § 5149.17(B) (emphasis supplied). There has been no showing that Mr.
> Kaczmarek was entitled to be released on April 1, 1994, under the standards set
> by Ohio for its own probationers and parolees.

Kaczmarek v. Longsworth, 1997 WL 76190 at *4.

Likewise here, Plaintiff argues that after the Board was notified by the New Jersey authorities that it would not be issuing a detainer, Plaintiff had a fundamental right guaranteed by the United States Constitution to be released. Just like the plaintiff in Kaczmarek argued in his case, Plaintiff argues here that the Board was merely the agent of the New Jersey probation or court authorities and when the New Jersey authorities determined that they would not issue a warrant to detain Plaintiff, then the Pennsylvania authorities were without power thereafter to detain him. This Court agrees with the reasoning of the Sixth Circuit in Kaczmarek and finds that Plaintiff has made no showing that under circumstances similar to the ones Plaintiff faced, the Board could not detain a special probationer.

Plaintiff cannot reasonably dispute that the Board could order the arrest and detention of a special probationer who was charged with new crimes, especially one that involved the illegal possession of a firearm. And indeed, it appears that Plaintiff even concedes at some points that the Board could do so at least prior to the New Jersey authorities communicating to the Board that the New Jersey authorities would not issue a warrant to detain Plaintiff.[11] However, the crux

---

11. See, e.g., Dkt. [71] at 9 to 10, wherein, Plaintiff conceded that

> The difference between the Plaintiff's position and the PaBPP's position is what powers the PaBPP has **after** their right to initially arrest and detain a special probationer until New Jersey or the Court makes it decision. The Plaintiff does not dispute their rights to detain any special probationer, or out-of-state probationer. The question is what happens when the controlling authority (in this case New Jersey's designated authority, in special probation cases the County Judge) decides not to revoke the probation or continue the detainer?

(continued...)

of Plaintiff's argument, relying on principles of agency law, is that after New Jersey did so inform the Board, the Board's authority to continue Plaintiff's detention dissolved, essentially because the Board was acting solely as an agent for the New Jersey authorities and when the principal, i.e., New Jersey, said it would not detain, then the agent, i.e., the Board, was bound thereby to follow that principal's directives.  Plaintiff analogizes this situation to the situation where the Board detains a Pennsylvania probationer but does so only until the Pennsylvania court which sentenced the probationer decides whether to revoke probation or decides to permit the probationer to continue on with his probation.  Plaintiff essentially argues that because the Board could not continue to detain a special probationer where the trial court that sentenced the person to probation declines to revoke the probation, similarly, the Board could not continue to detain Plaintiff where the New Jersey authorities decided not to issue a warrant to detain him and for the Board to do so, it acted to usurp the New Jersey authorities' power to revoke Plaintiff's probation. Dkt. [71] at 12 to 13.  The Court is not convinced by the analogy.

Several considerations make this analogy inapt.  First, contrary to Plaintiff's suggestion, the Board's decision to continue to detain Plaintiff did not amount to a revocation of his probation.  Plaintiff continued to be on probation on the New Jersey sentence.  He was simply being detained by the Board while awaiting a revocation hearing by the New Jersey authorities, which in turn, were awaiting the outcome of the new state charges (which eventually were nolle prossed in favor of federal charges).  The New Jersey authorities in fact did eventually hold a

11.  (...continued)
<u>Accord</u> Dkt. [64] at 17 ("Plaintiff therefore requests summary judgment be granted in his favor on the issue of whether the PaBPP had lawful authority to detain the Plaintiff beyond August 4, 2005, the date on which he posted bail on the new criminal charges, **or, at a minimum, after September 19, 2005 when New Jersey notified Pennsylvania that, contrary to Pennsylvania's recommendation, it would not be issuing a warrant to detain the Plaintiff.**")(emphasis added).

revocation hearing and did revoke Plaintiff's probation, after Plaintiff's conviction on the federal indictment. Dkt. [58-3] at 21to 22. The Court rejects Plaintiff's argument that simply because the sending state retains the exclusive authority to revoke the probation of a transferee probationer, then this necessarily means that the receiving state's authorities have no power to detain. See Dkt. [64] at 12. Such a conclusion follows neither as a matter of logic nor of law. That the Board's power to detain pending a decision to revoke is not the equivalent of a de facto revocation of probation under state law is made clear by Commonwealth v. Kelly, 931 A.2d 694, 698 (Pa. Super. 2007), wherein the court noted that

> Where a defendant violates the conditions of probation, as Appellant did in this case by committing other crimes, "[PBPP] may ... **detain** the special probationer or parolee in a county prison and make a recommendation to the court, which **may result in the revocation of probation** or parole and commitment to a penal or correctional institution to serve a sentence in the case of probation or the remainder of the sentence in the case of parole." 37 Pa.Code § 65.3

(emphasis added, emphasis deleted). The clear direction of this passage is that under State law, the Board may detain pending a decision on the revocation of the probation by the State Court. If the Board may detain one of its own special probationers pending a Common Pleas Court's final decision on revocation of probation, then the Board may detain an out of state probationer, pending the out-of-state authorities' final decision on revocation, even if the out of state authorities do not wish the probationer to be detained while awaiting the final decision on revocation.

The second reason that the Plaintiff's analogy is inapt is that, whereas the Board, in cases of special probationers, serves **solely** as the agent of the Pennsylvania state sentencing court in supervising the probationer, in cases of out-of-state probationers supervised by the Board under the Compact, we know that the Board acts in a dual capacity, not only as agent of the out-of-state authorities but also, the Board acts independently in applying its own standards of supervision.

19

See, e.g., Kaczmarek v. Longsworth, 1997 WL 76190, at *4 (rejecting the notion that the sending state authorities were the sole ones who called the shots and citing to the fact that the receiving state authorities were able to independently apply their own standards of supervision). See also Dkt. [58-7] at 31 (Interstate Commission for Adult Offender Supervision Advisory Opinion Number 2-2005 issued March 4, 2005, which states that "In supervising out-of-state offenders, authorities in a receiving state possess a dual status. First, they act to supervise such an offender under the same standards as any in-state offender. Second, they act as agents for the sending state to supervise and effectuate the purposes of the offender's probation."). Hence, Plaintiff's reliance on principal-agency theories is unconvincing because, contrary to Plaintiff's argument, the Board is not merely an agent of the New Jersey authorities. Third, the Board and the Pennsylvania state trial court can be thought to be more sensitive to the safety needs of the community in which the out-of-state probationer resides than the sending state's authorities might be. See Dkt. [64] at 15 (Plaintiff quotes Defendant McVey regarding the Board as testifying that "[w]hen we have a probationer from Pennsylvania, we have the ability to be in close contact with the sentencing judge, who is in that community, who is very sensitive to the public safety of that local community at that point in time."). Given the fundamental purpose of the Interstate Compact for Supervision of Adult Offenders is the "promotion of public safety," Dkt. [58-7] at 31, that the Board is not in the same relationship with the New Jersey authorities that the Board is in with the Pennsylvania state sentencing court is self evident, especially with respect to the concern for local community safety. For all of these reasons, Plaintiff's attempt to analogize the facts of this case to the scenario where the Board is essentially not obeying the sentencing court's orders by not immediately releasing Plaintiff upon the New Jersey authorities' communicating that they will not issue a warrant to detain Plaintiff is not persuasive.

To the extent that Plaintiff argues that the Compact merely permits the Board to treat out of state probationers the same as "special probationers" under state law and because under state law the Board is without authority to detain a special probationer, then the Board was without authority to detain Plaintiff,[12] the court is unpersuaded.  Plaintiff is simply mistaken as to his understanding of Pennsylvania state law.   As made clear by the Superior Court, "[w]here a defendant violates the conditions of probation, as Appellant did in this case by committing other crimes, '[PBPP][i.e., the Board]  **may** ... **detain the special probationer or parolee in a county prison** and make a recommendation to the court, which may result in the revocation of probation or parole and commitment to a penal or correctional institution to serve a sentence in the case of probation or the remainder of the sentence in the case of parole.'" (emphasis added and emphasis deleted)(quoting 37 Pa.Code § 65.3).   Moreover, it appears the Board's detaining of probationers oftentimes occurs prior to any direction of the state sentencing court.   Hence, under State law, as part of its authority to supervise probationers, including special probationers, the Board clearly was authorized by state law to detain Plaintiff.[13]

Accordingly, given that the State Defendants had authority to detain Plaintiff, either as a consequence of the Interstate Compact alone, or as a consequence of the interaction between the

---

12.   Dkt. [64] at 14 to 17.

13.   In this vein, the Court rejects Plaintiff's reading of 61 P.S. § 331.17 and/or of § 331.17a, wherein Plaintiff argues that Sections 331.17 and 331.17a limit the authority of the Board to "supervision" only and this power to supervise does not include the power to detain. Dkt. [54] at 12 to 16. The Court finds that the power to supervise under these Pennsylvania statutes necessarily entails the power to detain pending a Gagnon I and Gagnon II hearing.  While the power to detain is not without limits, the power to detain is the power to detain for a reasonable period, and here, the period of Plaintiff's detention was not unreasonable as a matter of law.  Goodman v. Keohane, 663 F.2d 1044, 1046 (11th Cir. 1981)(test to determine whether delay in holding parole revocation hearings, while the parolee is detained violates constitution is one of unreasonableness); Faheem-El v. Klincar, 841 F.2d 712,724 (7th Cir. 1988) ("Morrissey mandates certain procedural safeguards to protect the parolee's conditional liberty interest, but as previously observed, these processes take time").

Interstate Compact and Pennsylvania State law, the State Defendants are entitled to summary judgment in their favor on Plaintiff's Section 1983 claims.

Consequently, given that the State Defendants had authority to detain Plaintiff, the County Defendants' maintenance of Plaintiff in custody pursuant to the Board's directive cannot be said to violate Plaintiff's federal rights either.

### 3. Alternative holdings in support of Defendants's Summary Judgment Motions

Alternatively, even if the Board was without authority to detain Plaintiff, which we have found it was not without, the County Defendants would still be entitled to summary judgment based on the indisputable facts that the County Jail authorities were presented with a facially valid warrant issued by the Board to detain Plaintiff. In light of this, the County Defendants had no obligation, under pain of violating Plaintiff's federal rights, to look behind this facially valid warrant and question the authority of the issuing body. See, e.g., Thompson v. Duke, 882 F.2d 1180, 1186 (7th Cir. 1989)(where a parolee was arrested on new charges and a parole warrant was placed upon him and where he was subsequently exonerated from the new charges, but continued to be detained on the parole warrant and where he sued the jailers for holding him thereunder, the Court held that "[o]n the basis of *McCollan*, [cited below,] Hardiman and Patrick, as mere jailers, only had a duty to determine the facial validity of the [Parole Board] warrant under which Thompson was held; they had no independent duty to investigate Thompson's claims of innocence. Furthermore, the facial validity of the warrant was not undercut by Thompson's acquittal on the burglary charge."); Figg v. Russell, 433 F.3d 593, 599 (8th Cir. 2006) (the court found that jailers had absolute immunity for their incarcerating a prisoner who subsequently sued them and the court noted that "[d]uring the 416 days that Figg alleges she was confined

'illegally,' the state habeas court had not yet issued her writ, and thus the jailors and warden were acting pursuant to facially valid orders from the Eighth Judicial Circuit Court of South Dakota **and the Parole Board**.")(emphasis added); Lepre v. Tolerico, 156 Fed.Appx. 522, 525 (3d Cir. 2005)("Because defendants Carlson, Kosch, and McGraw acted pursuant to a valid bench warrant directing them to apprehend Lepre and to incarcerate him at the Lackawanna County Jail, they are entitled to absolute immunity."); Patterson v. Von Riesen, 999 F.2d 1235, 1241 (8th Cir. 1993) ("We simply conclude that a warden is absolutely immune from damages flowing from the fact of a prisoner's incarceration, when that incarceration occurs pursuant to a facially valid order of confinement."). Cf. Baker v. McCollan, 443 U.S. 137, 143 (1979)(where an actually innocent man was detained by the sheriff in the sheriff's jail for 3 days pursuant to a facially valid warrant, the Court concluded that no deprivation of liberty without due process had occurred given that the prisoner plaintiff was arrested pursuant to a warrant issued by a magistrate upon a determination of probable cause and holding that "since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial."). This is true notwithstanding Plaintiff's argument that the Board had no legal authority to issue the warrant to detain and therefore such warrant is illegal. Mays v. Sudderth, 97 F.3d 107, 113 (5th Cir.1996) ("where a sheriff executes a facially valid warrant in a constitutionally permissible manner, he should not face liability for the warrant's unlawfulness.").

In the alternative, even if the Defendants had violated Plaintiff's rights by detaining him beyond the date of September 19, 2005 (the date whereon the New Jersey authorities definitively informed the Pennsylvania authorities that no New Jersey warrant to detain Plaintiff would

issue), which we have found they did not violate, the Court finds that in light of the foregoing analysis, all of the real person Defendants are entitled to summary judgment based on their qualified good faith immunity.  In light of <u>Kaczmarek</u>, and the other case law cited above, it would not have been clear to a reasonable official in the Defendants' shoes that issuing a warrant to detain Plaintiff despite the sending state's decision not to issue such a warrant constituted a violation of any of Plaintiff's federal rights.  <u>Curley v. Klem</u>, 278 F.3d 271, 277 (3d Cir. 2002) (to conduct a qualified good faith immunity analysis, "a court must consider 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'  This inquiry, the Court noted, 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'")(citations omitted).  Hence, all of the real person Defendants[14] are entitled to qualified good faith immunity.

In the alternative, as for the Commonwealth of Pennsylvania, the Board and any claims against David Sedon, in his official capacity, all of these defendants are entitled to summary judgment based on their Eleventh Amendment immunity, as argued by the Defendants and as conceded by the Plaintiff.  Dkt. [71] at 2.[15]

Accordingly for any or all of the foregoing reasons the Defendants are entitled to summary judgment as to the federal claim under Section 1983.

### 4. State Law Claims

---

14.  Municipalities such as Defendants Allegheny County and the Jail are not entitled to the defense of qualified good faith immunity.  <u>See</u>, <u>e.g.</u>, <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination</u>, 507 U.S. 163, 166 (1993)("municipalities do not enjoy immunity from suit-either absolute or qualified-under § 1983.").

15.  As to his federal claims, Plaintiff sues Catherine McVey only in her individual capacity.  <u>See</u>, <u>e.g.</u>, Dkt. [24] at 41.

Given the recommendation to grant summary judgment to the Defendants as to Plaintiff's sole federal claim under Section 1983, the Court recommends that the District Court decline to exercise supplemental jurisdiction over the state law claims raised by Plaintiff because there does not affirmatively appear on the record any reason for the Court to exercise supplemental jurisdiction over the state law tort and state constitutional law claims.  See, e.g., Boneburger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'")(quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995));  28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction . . . .").    The grant of summary judgment by a court on the federal claims is included within the meaning of the phrase contained in Section 1367(c)(3), i.e., "dismissed all claims."  Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976) ("If it appears that the federal claim is subject to dismissal under F.R.Civ.P. 12(b) (6) or could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances."); O'Brien v. Maui County, 37 Fed.Appx. 269, 273 (9th Cir. 2002) ("Having disposed of all of O'Brien's federal claims on summary judgment, the district court declined to assert supplemental jurisdiction over O'Brien's state law negligence claims. O'Brien contends that this constituted reversible error.  There is no basis for her contention. Under 28 U.S.C. § 1367(c)(3), a district court may, in its discretion, decline to exercise supplemental jurisdiction over related state law claims once it has 'dismissed all claims over which it has original jurisdiction....' As the district

court properly dismissed the federal claims, it did not abuse its discretion in dismissing the state law negligence claims as well.")(footnote omitted).

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, written objections are due by June 19, 2008, in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/ _Amy Reynolds Hay_
United States Magistrate Judge

Dated: 2 June, 2008

cc: Arthur J. Schwab
   United States District Judge

   All counsel of record by Notice of Electronic Filing